## KNOX v. GREAT WEST LIFE ASSUR. CO. et al.

Civ. No. 7922.

United States District Court
E. D. Michigan, S. D.

Dec. 12, 1952.

Phillip Nusholtz and Donald W. Loria, Detroit, Mich., for Jacob Morris Knox.

William H. Granse, Detroit, Mich., Hill, Essery, Lewis & Andrews, Detroit, Mich., for defendant.

Joseph C. Murphy, Acting U. S. Atty. and Roger P. O'Connor, Asst. U. S. Atty., Detroit, Mich., for the United States.

THORNTON, District Judge.

The purpose of this action is to determine whether the plaintiff, or the United States of America, has a prior right to the cash surrender value of two life insurance policies and one annuity policy, hereinafter described. The claim of the United States is based on its tax liens against the insured, Dr. Jacob Morris Knox, interpleaded defendant and husband of the plaintiff. The plaintiff claims a prior right as the beneficiary named by the insured. Originally she was named a revocable beneficiary in each of the policies; later, after the federal taxes here involved had been assessed against the insured, he attempted to make the plaintiff an irrevocable beneficiary with respect to the annuity policy, and attempted to assign to her one of the life insurance policies. The defendant, Great West Life Assurance Company, hereinafter sometimes referred to as the Assurance Company, has declined to make the change in beneficiary and the assignment requested by the insured, because of the intervening notice of tax lien and levy filed with the Assurance Company on behalf of the United States. Plaintiff instituted this action in the Circuit Court for Wayne County, Michigan, seeking to restrain the Assurance Company from disposing of the cash surrender value of the policies, and secured a temporary injunction. Upon petition of the defendant, Great West Life Assurance Company, the case was removed to this Court, and pursuant to answer and counterclaim of that defendant, here filed, the insured Jacob Morris Knox, and the lien claimant United States of America, were interpleaded as defendants. Answers have been filed by these interpleaded defendants, and the United States has filed an amended answer and counterclaim for foreclosure of its tax liens, to which plaintiff and the defendant

Assurance Company have filed their respective replies. In conjunction with the foregoing, the following Stipulation of Facts has been submitted for consideration:

"1. The plaintiff LaClaire E. Knox is a citizen and resident of the State of Michigan and resides in the City of Detroit, County of Wayne, in said State of Michigan and is the wife of Dr. Jacob Morris Knox, one of the interpleaded defendants who is a citizen and resident of the said State of Michigan and resides in said City of Detroit. The Great West Life Assurance Company is a corporation organized, created and existing under and by virtue of the laws of the Dominion of Canada and is a citizen of the Dominion of Canada. Its principal office is located in Winnipeg, Manitoba, Canada, and it is licensed to do business in the State of Michigan with a place of business in the said City of Detroit, County of Wayne and State of Michigan. The United States of America is also one of the interpleaded defendants.

"2. On August 1, 1936, said defendant the Great West Life Assurance Company issued its pension policy, socalled, No. P 631702, on the life of said interpleaded defendant Jacob Morris Knox. A true copy of said policy, together with all endorsements thereon, is attached hereto and marked Exhibit A. On July 17, 1941, said defendant the Great West Life Assurance Company issued its pension policy, socalled, No. P 726606, on the life of said interpleaded defendant Jacob Morris Knox. A true copy of said policy, together with all endorsements thereon, is attached hereto and marked Exhibit B. On June 15, 1945, said defendant the Great West Life Assurance Company issued its single premium deferred annuity policy No. SAN 825359 to said interpleaded defendant Jacob Morris Knox. A true copy of said policy, together with all endorsements thereon, is attached hereto and marked Exhibit C.

"3. On April 16, 1948, the Commissioner of Internal Revenue duly assessed against said interpleaded defendant Jacob Morris Knox additional income taxes for the calendar year 1943 in the sum of $10,653.58, plus a penalty of $5,314.51 and interest of $2,460.76 or a total of $18,428.85. A payment of $1,426.57 has been made on this account, thus reducing the amount outstanding to $17,002.28, plus accrued interest. On April 16, 1948, the Commissioner of Internal Revenue also duly assessed against said interpleaded defendant Jacob Morris Knox additional income taxes for the calendar year 1944 in the sum of $6,937.25, plus a penalty of $3,468.63 and interest of $1,214.30 or a total of $11,620.18, which sum, plus accrued interest, is outstanding and has not been paid. On April 16, 1948, the Commissioner of Internal Revenue further duly assessed against said interpleaded defendant Jacob Morris Knox additional income taxes for the calendar year 1945 in the sum of $8,138.96, plus a penalty of $4,069.48 and interest of $941.27 or a total of $13,149.71, which sum, plus accrued interest, is outstanding and has not been paid. The assessment list containing said assessments for the calendar years 1943, 1944 and 1945 was duly received on April 19, 1948, by the Collector of Internal Revenue for the District of Michigan. Notice of said assessments was duly given in writing to said interpleaded defendant Jacob Morris Knox and demand for payment thereof was duly made on April 29, 1948, and June 23, 1948, by the Collector of Internal Revenue. A notice of federal tax lien bearing No. 35084 relating to said assessments was filed on September 21, 1948, with the Clerk of the United States District Court at Detroit, Michigan.

"4. On October 26, 1948, said interpleaded defendant Jacob Morris Knox filed with the Detroit Office of said defendant the Great West Life Assurance Company a Change of Beneficiary form with respect to said policy No. SAN 825359, nominating said plaintiff LaClaire E. Knox as beneficiary ir-

revocably. Said Change of Beneficiary form is dated October 26, 1948, and a true copy thereof is attached hereto and marked Exhibit D.

"5. Pursuant to the terms and provisions of said policy No. SAN 825359 (Exhibit C attached hereto), the said defendant the Great West Life Assurance Company requested said interpleaded defendant Jacob Morris Knox to deliver the said policy to it in order that the said change of beneficiary might be endorsed thereon. Subsequent to December 11, 1948, said interpleaded defendant Jacob Morris Knox and the said plaintiff LaClaire E. Knox delivered to the Detroit office of said defendant the Great West Life Assurance Company two Declaration of Loss forms wherein they set forth that the said policy No. SAN 825359 was lost, true copies of said Declarations of Loss dated December 11, 1948, being attached hereto and marked respectively Exhibits E and F. The said Change of Beneficiary and Declaration of Loss forms were received on January 3, 1949, by the home office of the said defendant the Great West Life Assurance Company at Winnepeg, Canada. The said Change of Beneficiary and Declaration of Loss forms are in the possession of said defendant, but, because of the service on it by the interpleaded defendant United States of America of a Notice of Levy and various Warrants for Distraint (all as more fully set forth in Paragraph 9 hereof) and the pendency of this action, the said defendant the Great West Life Assurance Company has not issued a duplicate of said policy No. SAN 825359 to said interpleaded defendant Jacob Morris Knox nor has it endorsed on said policy or any duplicate thereof any change of beneficiary as requested in said Change of Beneficiary form (Exhibit D hereto attached).

"6. On August 4, 1949, the said defendant the Great West Life Assurance Company received from said plaintiff LaClaire E. Knox a further declaration as to the loss of said policy No. SAN 825359 and also received from said interpleaded defendant Jacob Morris Knox a further declaration as to the loss of said policy No. SAN 825359, true copies of said Declaration of Loss being attached hereto and marked respectively Exhibits G and H. Because of the aforesaid proceedings by said interpleaded defendant United States of America and the pendency of this action, the said defendant the Great West Life Assurance Company has not issued a duplicate policy No. SAN 825359. On October 26, 1949, the said defendant the Great West Life Assurance Company returned the said last-mentioned Declarations of Loss (Exhibits G and H attached hereto) to said plaintiff and said interpleaded defendant Jacob Morris Knox, respectively together with letters of explanation, true copies of which are attached hereto and marked Exhibits I and J, respectively.

"7. On August 4, 1949, the said defendant the Great West Life Assurance Company received from said interpleaded defendant Jacob Morris Knox an assignment of said policy No. 726606. A true copy of said assignment is attached hereto and marked Exhibit K. Because of the aforesaid proceedings by said interpleaded defendant United States of America and the pendency of this action, the said defendant on October 26, 1949, returned said assignment to said interpleaded defendant Jacob Morris Knox, together with a letter of explanation (Exhibit I attached hereto).

"8. The cash surrender values of the said policies and the value of the premium suspense account in connection with said Policy No. P 631702 as of July 1, 1950 are:

"Policy No. P 631702    $1,439.14
"Premium Suspense Account in connection with No. 631702    332.12
"Policy No. P 726606    2,238.77
"Policy No. SAN 825359    20,907.16

"9. On November 1, 1948, interpleaded defendant United States of America caused to be served upon the defendant Great West Life Assurance Company a Notice of Levy, together with a copy of a notice of federal tax liens bearing No. 35084 and three warrants for distraint covering additional income taxes for the calendar years 1943, 1944 and 1945, assessed against said interpleaded defendant Jacob Morris Knox. Said Notice of Levy notified the defendant Great West Life Assurance Company that the sum of $43,827.57 was then due from said interpleaded defendant Jacob Morris Knox to the United States of America for internal revenue taxes, penalties and interest and demanded that the defendant Great West Life Assurance Company surrender to the United States of America all property, rights to property, moneys, credits and/or bank deposits belonging to said interpleaded defendant Jacob Morris Knox in the possession of the defendant Great West Life Assurance Company. On December 21, 1948, interpleaded defendant United States of America caused to be served on the defendant Great West Life Assurance Company a final notice and demand. Copies of the notice of levy, notice of federal tax liens, warrants for distraint and the final notice and demand are attached to the answer and counterclaim for interpleader of the defendant Great West Life Assurance Company filed in this proceeding.

"10. On January 3, 1949, the said plaintiff LaClaire E. Knox commenced an action in the Circuit Court for the County of Wayne, Chancery No. 441677, against the said defendant the Great West Life Assurance Company and obtained an injunction restraining said defendant from paying out any moneys or proceeds of said policies. On January 19, 1949, said defendant duly removed the aforesaid action to this court. On January 24, 1949, the said defendant duly filed its answer and counterclaim for interpleader herein, praying that said interpleaded defendants Jacob Morris Knox and the United States of America be made parties defendant herein. On January 24, 1949, this Honorable Court entered its order interpleading the said Jacob Morris Knox and the United States of America as parties defendant herein.

"11. It is hereby expressly understood and agreed that the interpleaded defendant, United States of America, denies all of the statements and matters contained in Exhibits E, F, G, and H attached to this stipulation and may take testimony or offer evidence in connection with said exhibits and also in connection with Exhibit K hereto attached."

The exhibits mentioned in the Stipulation of Facts will not be attached to this opinion.

The question for determination is whether the tax lien of the United States against the cash surrender value of the policies involved is prior to the rights of the plaintiff-beneficiary of those policies.

The plaintiff is proceeding on the theory that the defendant, the United States of America, is estopped from levying upon the insurance policies, and in support of this contention advances the following:

"The Michigan law is clear that the insurance policies in question are protected from levy. Michigan Statutes Annotated 24.287 provides in part:

'It shall be lawful for any husband to insure his life for the benefit of his wife * * * and in case that any money shall become payable under the insurance, the same shall be payable to the person or persons for whose benefit the insurance was procured * * * for his, her or their own use and benefit, free from all claims of the representatives of such husband * * * or of any of his creditors; * * * and the proceeds of any policy of life or endowment insurance, which is payable to the wife, husband or children of the insured, * * * including the

cash value thereof, shall be exempt from execution or liability to any creditor of the insured * * *.

'If a policy of insurance, or contract of annuity * * * is effected by any person on his own life * * * in favor of a person other than himself * * * the lawful beneficiary * * shall be entitled to the proceeds and avails (including the cash value thereof) against the creditors and representatives of the insured and of the person effecting the same, (whether or not the right to change the beneficiary is reserved or permitted and whether or not the policy is made payable in the event that the beneficiary * * * shall predecease such person, to the person whose life is insured or the person effecting the insurance) * * *.'

"It is evident from the unambiguous language contained in the statute that any and all creditors are prevented from levying upon any insurance policies of a husband insuring his life for the benefit of his wife whether or not the wife is a revocable or irrevocable beneficiary.

"The purpose of this statute is clear. There are certain sacred rights which citizens of this country still retain. The homestead is one. Life insurance policies are another. * * *"

The claim of the United States, against the cash surrender value of the policies involved in this litigation, is based on its tax lien created and existing under the provisions of Sections 3670 and 3671 of the Internal Revenue Code, Title 26 U.S.C.A., § 3670 and 3671. Section 3670 reads as follows:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, wheth-er real or personal, belonging to such person."

Section 3671 fixes the time that the lien arises and the period of its duration, as follows:

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

The Stipulation of Facts reveals that the taxes involved here were duly assessed, that the assessment list covering all these taxes was received by the collector on April 19, 1948, that notice and demands for payment were issued to the taxpayer, Dr. Jacob Morris Knox, on April 28 and June 23, 1948, and that the taxpayer has failed and neglected to pay the greater part of those tax assessments. Under these stipulated facts, and in accordance with the plain and unambiguous language of the above statutes, the taxes assessed and outstanding became a lien upon all property and rights to property of Dr. Jacob Morris Knox on April 19, 1948, the date the assessment list was received by the collector. From that date the tax lien attached to the property rights of the taxpayer, who is the insured, in the annuity and insurance policies which are the subject of this litigation.

As evidenced by the Stipulation of Facts, this tax lien arose prior to the dates the insured attempted to make the plaintiff an irrevocable beneficiary under the annuity policy (October 26, 1948), and attempted to assign to the plaintiff the larger of the insurance policies (August 4, 1949).

In consequence of this, any interest the plaintiff may have acquired in these policies through those subsequent transfers attempted by the insured, was subject and inferior to the federal tax lien against the insured's rights in those policies.

Authority for the priority of the federal tax lien, regardless of the exemptions authorized by Sec. 24.287 of Michigan Statutes Annotated, Comp.Laws 1948, § 522.24, is found in State of Michigan v.

United States, 317 U.S. 338, 340, 63 S.Ct. 302, 87 L.Ed. 312, wherein it is stated in part as follows:

"We do not stop to inquire whether this construction of the state statutes is the correct one for we think the argument ignores the effect of a lien for federal taxes under the supremacy clause of the Constitution. The establishment of a tax lien by Congress is an exercise of its constitutional power 'To lay and collect Taxes'. Article I, § 8 of the Constitution. United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705. And laws of Congress enacted pursuant to the Constitution are by Article VI of the Constitution declared to be 'the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'

" 'It is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere.' Burton v. Smith, 13 Pet. 464, 483, 10 L.Ed. 248; Rankin v. Scott, 12 Wheat. 177, 179, 6 L.Ed. 592; Howard v. Railway Co., 101 U.S. 837, 845, 25 L.Ed. 1081. Hence it is not debatable that a tax lien imposed by a law of Congress, as we have held the present lien is imposed, cannot, without the consent of Congress, be displaced by later liens imposed by authority of any state law or judicial decision. United States v. Snyder, supra; United States v. City of Greenville, 4 Cir., 118 F.2d 963."

The Michigan exemption statute, Sec. 24.287, is not effective in estopping the Government from foreclosing its tax lien in the within matter:

"* * * it is well settled that state exemption laws do not protect property from the incidence of Federal taxation." Smith v. Donnelly, D.C., 65 F.Supp. 415, 418.

As further authority that exemptions provided by state laws are ineffective against the statutory liens of the United States for federal taxes, it has been held in United States v. Heffron, 9 Cir., 158 F.2d 657, 658, that:

"The Federal taxes assessed as aforesaid constituted liens in favor of appellant upon all property of the bankrupt, including his interest in the homestead property, and, that interest having been sold, constitute liens upon the proceeds thereof—the $4,467.96 here in question. Against such liens, exemptions prescribed by State laws are ineffective. * * *" See also Jones v. Kemp, 10 Cir., 144 F.2d 478, 480.

Since the tax lien of the United States, as set forth in the Stipulation of Facts, is not subject to any limitation or exemption provision contained in the Michigan statute, Section 24.287, the United States is entitled to have its tax lien foreclosed against the cash surrender value of all the policies set out in the Stipulation of Facts, free and clear of any claims of the plaintiff-beneficiary; that any rights or interests which the plaintiff may have in these policies are subject and inferior to the lien of the United States so, therefore, the injunction heretofore obtained by the plaintiff in this case is voided and set aside; the complaint of the plaintiff is dismissed, and' the tax lien of the United States should be foreclosed against the cash surrender value of the three policies which are the subject matter of this litigation.

An order may be so entered.